# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID LOGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1759 |
| | ) | Magistrate Judge Bissoon |
| MELVIN LOCKETT, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

David Logan ("Logan" or "Plaintiff"), is a state prisoner who has filed a civil rights action pursuant to the provisions of 42 U.S.C. § 1983. Logan alleges in his Complaint that he was denied the right to participate in Ramadan fasting with the rest of the Muslim community at the State Correctional Institution at Greensburg, Pennsylvania, in September and October, 2007. He asserts that this violated his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), as well as the First and Fourteenth Amendments to the United States Constitution. The parties have filed cross-motions for summary judgment (Docs. 25 and 44).

### A. Underlying Facts

The Muslim holy month of Ramadan began on September 13, 2007, and ended on October 12, 2007. The State Correctional Institution at Greensburg provides an accommodation to Muslim inmates who wish to fast during Ramadan that consists of having breakfast bags distributed to inmates in their cells prior to sunrise, and then a communal meal is held in the inmate dining hall after sunset (Doc. 28, Exhibit A, ¶¶ 13-15). The responsibility for determining which inmates participate in the fast and communal meal rests with David Watkins,

1

the Facility Chaplaincy Program Director at SCI-Greenburg (Id., ¶4). Mr. Watkins was assisted by Abdullah Rahim Muhammad, the Islamic Chaplain (Imam), at SCI-Greensburg, in making the determination of inmate participation (Id., ¶¶ 20-21).[1] Mr. Watkins has attested that an inmate wishing to participate in the communal Ramadan fasting at SCI-Greensburg is included on the list if: (1) he signs the Ramadan sign-up sheet posted in the Prison Chapel at the final prayer service prior to Ramadan; or (2) he has participated in at least 60% of the weekly ("Juma") prayer services (Id., ¶¶ 26-27). An inmate who does not sign up, or who does not meet the standards for automatic inclusion, may nonetheless fast in his cell (Id., ¶ 25).

Plaintiff alleges in his Complaint that he prepared an "inmate request to staff" and sent it to Imam Muhammad on August 18, 2007, requesting that his name be included on the Ramadan fasting list (Doc. 3, p. 3, ¶5). When he was not provided with a morning meal on September 13, 2007, and when he was not permitted to attend the evening communal meal later that same day, Plaintiff contacted his counselor who, in turn, is alleged to have contacted Imam Muhammad. Imam Muhammad is said to have informed Plaintiff's counselor that Plaintiff was kept off of the fasting list because he failed to attend 60% of the Imam's weekly prayer services (Id., p. 4, ¶¶ 16-17).

Plaintiff filed a grievance dated September 15, 2007, in which he asserted that "as a practicing Muslim" he should have been permitted to participate in the Ramadan fast, but that he was denied the opportunity to do so on the basis that he had not attended prayer services for the previous "nine months" (Doc. 28, Ex. E). Mr. Watkins denied Plaintiff's Grievance on October 2, 2007 (Doc. 28, Ex. F). Specifically, Watkins noted that the "list of those who receive breakfast bag meals and whom break the fast together after sunset is comprised of those who

---

[1] Imam Muhammad was a named Defendant in this case, but was dismissed when he was not served within 120 days of the filing of the complaint (Doc. 46).

regularly attend Juma Prayer each Friday." (Id.). Watkins stated that a review of the records kept by Imam Muhammad showed that Plaintiff attended only one prayer service, and that was on August 17, 2007, even though Plaintiff had been at SCI-Greensburg for "well over a year." (Id.). Mr. Watkins then made the following observations:

> When you and I discussed your grievance on September 27, you made it very clear that the reason you refused to attend the weekly Juma Prayer services was that you had a very different view of Islam than what is taught by SCI-Greensburg's Islamic Chaplain, Abdullah Rahim Muhammad. I then asked if you were aware that the Inmate Imam, Ralph Bolden delivered the Khut-ba more than half the time. You said that you were aware but that did not agree with what he taught also. You made it quite plain that you did not like the entire attitude and atmosphere of the Islamic Community here at Greensburg.
>
> Mr. Logan, according to Department of Corrections policy you are free to practice whatever religion you choose in the privacy of your cell. You may fast the meals of your choice according to your religious belief. However, the decision to choose who may participate in the observance of Ramadan and the Eid Feasts is left to the Islamic Chaplain. Why you would choose to break your fast with a community of Muslims that you are vocally opposed to is of deep concern to me.

(Id.). Mr. Watkins then affirmed, or agreed with, Imam Muhammad's decision to leave Plaintiff off of the Ramadan fasting list.

The matter was then forwarded to Superintendent Lockett, also a Defendant in this case. Plaintiff, in an October 5, 2007 appeal from the denial of his grievance, argued that "there is nothing in the D.O.C. policies and more importantly in the Religion of Islam that says that a Muslim has to attend '60% or better' of Friday services in order to seek the blessings of fasting a month which has unlimited rewards." (Doc. 28, Ex. G). Logan complained that the prison failed to provide him with "a well balanced meal" and that he suffered abdominal pain, headaches and exhaustion (Id.). Plaintiff challenged Watkins' conclusion that Plaintiff is not a "member" of the Islamic faith. In his October 10, 2007 response, Superintendent Lockett stated that he supported

3

Mr. Watkins's decision (Doc. 28, Ex. H):

> You have not met the minimum standards of participation and criteria established by the organizers and Islamic Chaplain. Your views differ from the majority teachings and you chose to have no association with them. You have expressed your displeasure with the atmosphere of the Islamic Community of SCI-Greensburg and your lack of participation speaks volumes. You may make provisions afforded within policy for the free exercise of your religion in the privacy of your cell. You have not been acknowledged by the organizers, Facility Chaplain Director, or Muslim Chaplain as participating in the facility observance. The orderly, respectful, united observance of Ramadan is our goal with consideration for those abiding the rules and regulations governing the observance. You are not entitled to monetary compensation.

(Id.).

Logan pursued the administrative appeals process further and, ultimately, on December 12, 2007, Cindy Watson, Chief Grievance Coordinator, overturned the responses by Mr. Watkins and Superintendent Lockett. Ms. Watson stated that "all subsequent directives regarding participation in special religious observances [would] provide clear guidelines by which institutions can determine whether or not it is appropriate for an inmate to participate in special religious observances based on sincerely-held religious beliefs which are not dependent on one single criteria." (Doc. 28, Ex. I). Ms. Watson also noted Plaintiff's complaint that he had been denied meals for two days at the start of Ramadan, but stated that Plaintiff should have made complaints about nutrition to the dietary department.

## B. Legal Standard

A party's burden in response to a well-pleaded motion for summary judgment is to present "'. . . specific facts showing that there is a *genuine issue for trial*.' Fed. Rule Civ. Proc. 56(e)(emphasis added)" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

4

Plaintiff's Complaint seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

Plaintiff seeks summary judgment based upon his interpretation of the final disposition of his grievance appeal. I.e., Plaintiff believes that Ms. Watson has determined that his constitutional rights were violated when the prison prevented him from participating in the Ramadan fasting on the basis of his failure to attend a certain percentage of weekly prayer gatherings. Defendants, on the other hand, assert that Plaintiff's failure to participate in prayer services was merely one consideration, and that they had additional reasons for denying him the accommodation of participating in the communal fasting. Further, Defendants argue that Plaintiff has failed to establish that his ability to practice his religion was substantially impaired by the decision.

## C. **RLUIPA.**

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") provides that:

> "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [42 U.S.C. § 1997], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."

42 U.S.C. § 2000cc-1(a). In this respect, it must be remembered that incarcerated persons have a statutory right to follow the religious teachings of their choice. To prevail on a claim under

RLUIPA, an inmate must demonstrate that the State has imposed a "substantial burden" on the inmate's "religious exercise." RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5. As explained by one court, a claim under RLUIPA includes four elements, with a shifting burden of proof. Plaintiff has the burden of proving both that his religious exercise has been burdened, and that the burden is substantial. Spratt v. Rhode Island Dept. Of Corrections, 482 F.3d 33 (1st Cir.2007). The burden then shifts to the government to show both that the burden furthers a compelling governmental interest, and that the burden is the least restrictive means of achieving that compelling interest. Id.

Defendants, who are sued by Plaintiff in both their individual and official capacities, argue that they are entitled to summary judgment on Plaintiff's RLUIPA claims because Plaintiff seeks only monetary damages. RLUIPA does not support damage claims against state officials in their individual capacity. Sharp v. Johnson, 2008 WL 941686, at *19 (W.D.Pa. 2008); Brown v. Department of Corrections Pennsylvania, 2007 WL 4322980, at *16 (W.D.Pa.2007) (prison official "is not liable for damages in his individual capacity because RLUIPA does not authorize money damages against individuals") (citing cases). Accord Smith v. Allen, 502 F.3d 1255 (11th 2007). Thus, there can be no damages liability against any of the Defendants in their individual capacities, and Defendants are entitled to summary judgment with respect to the individual capacity damage claims brought under RLUIPA.

Likewise, RLIUPA does not authorize money damages against state actors in their official capacities. The Eleventh Amendment bars money damages sought against a state official acting in his or her official capacity absent a valid abrogation by Congress or consent of the State. Kentucky v. Graham, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114(1985) ("absent

waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."). Congress did not validly abrogate or purport to abrogate the States' sovereign immunity against damages claims under RLUIPA, and the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. Scott v. Beard, 2007 WL 3194039, at *1 (3d Cir.2007) (in a case against a Pennsylvania State official sued in his official capacity, the Court declared that the "RLUIPA claim for money damages against defendant in his official capacity-as claim essentially against state itself-is barred by the Eleventh Amendment). Defendants are, likewise, entitled to summary judgment on Plaintiff's RLIUPA official capacity claims for damages.

Although this disposes of Plaintiff's RLUIPA claims in their entirety, the Court also will address Defendants' argument that Logan has failed to establish a "substantial burden" on his ability to practice Islam, since that discussion will inform the Court's ruling on Plaintiff's First Amendment claim. Defendants argue that, given Plaintiff's vocal opposition to the manner in which Islam was practiced by the community led by Imam Muhammad at SCI-Greensburg, and Plaintiff's own choice to avoid fellowship with that community, he did not have a sincere religious belief that he was required to engage in **communal** Ramadan fasting and breaking of the fast **with the SCI-Greensburg Islamic community** in order to practice his religion. Therefore, Defendants argue, no substantial burden was placed upon Plaintiff's ability to practice his religion because congregational practices with the SCI-Greensburg community were not part of Plaintiff's practice of Islam.

The Court of Appeals for the Third Circuit has stated that a "substantial burden" for purposes of RLUIPA "exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates

7

versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." Washington v. Klem, 497 F.3d 272, 280 (3d Cir.2007) (emphasis in original).

In Small v. Lehman, 98 F.3d 762 (3d Cir.1996), the Third Circuit interpreted the precursor to RLUIPA, the Religious Freedom Restoration Act of 1993 ("RFRA"), and applied the substantial burden standard expansively.[2] In Small, Sunni Muslim inmates requested separate space for religious services, citing fundamental differences between their beliefs and those professed at the existing Muslim services. Id. at 764-65. The court rejected summary judgment for the defendants, finding the substantial burden issue "in serious dispute." Id. at 768. The court stated that "the opportunity to worship as a congregation by a substantial number of prisoners **may be** a basic religious experience and, therefore a fundamental exercise of religion . . .." Id. at 767 (emphasis added). Furthermore, when the only service "available [to] a prisoner is under the guidance of someone whose beliefs are significantly different from or obnoxious to his, the prisoner has been effectively denied the opportunity for group worship and the result may amount to a substantial burden on the exercise of his religion." Id. at 767 n.7 (quoting Weir v. Nix, 890 F.Supp. 769, 788 (S.D.Iowa 1995)). The Court of Appeals for the Third Circuit has thus placed importance on a prisoner's ability to congregate, even before the definition of religious exercise under RFRA expanded in RLUIPA.

Here, however, the situation in Small is turned inside-out. Notably, Plaintiff does not

---

[2] Small was decided before the United States Supreme Court struck down the RFRA as unconstitutional in City of Boerne v. Flores, 521 U.S. 507 (1997). Small has been overruled in part by Boerne, but the finding in Small that communal worship may be a fundamental aspect of the exercise of religion continues to be the law in the Third Circuit.

contest that he has a fundamental disagreement with the religious teachings of Imam Muhammad. Plaintiff does not contest the fact, or the details, of the conversation recounted by Mr. Watkins in his response to Plaintiff's grievance, and in more detail in Mr. Watkins's affidavit in support of Defendants' Motion for Summary Judgment. Defendants, therefore, have presented uncontradicted evidence that Plaintiff chose to separate himself from the Muslim community at SCI-Greensburg, and that this was due to his real and substantial disagreements with the teachings of the leaders of that community. The inmates in Smith desired the ability to congregate with like-minded Muslims, and asserted that the lack of an opportunity for congregational worship imposed a substantial burden on their ability to practice Islam. The Third Circuit recognized that this was a possible means of establishing a substantial burden on religious practice. Here, however, Plaintiff must establish as part of his *prima facie* case that his ability to practice Islam was substantially burdened not because he was denied the opportunity to congregate with like-minded Muslims, but because he was prevented from congregating with persons whose view of Islam is, to paraphrase Smith, "significantly different from or obnoxious to his . . .." 98 F.3d at 767 n. 7.

      Petitioner himself chose to avoid communal religious events at SCI-Greensburg, and he did so for the stated reason that he disagrees with the manner in which Islam is practiced by that community. Thus, Plaintiff's own actions, and his own description of his religious beliefs, establish that congregating with the Islamic community at SCI-Greensburg is not part of his practice of Islam. There is no manner in which the decision to prevent Plaintiff from the fellowship of persons whose beliefs differ from him in significant ways impaired his ability to practice his religion. Any benefit arising from the fellowship of like-minded souls, which was the underlying benefit identified in Smith for congregational worship practices, is simply absent

9

by definition in this case. Thus, any burden on Plaintiff's ability to practice his religion is difficult to discern at all, and certainly is not substantial. Plaintiff has failed to meet his burden of establishing a prima facie case under RLUIPA.[3]

D. **First Amendment Claim.**

The analysis above differs only slightly in the First Amendment context as opposed to RLUIPA. In order to establish a violation of his First Amendment right, Plaintiff must satisfy the standard set out in Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Turner instructs courts to weigh four factors: first, whether the rule/policy/practice bears a "valid, rational connection" to a legitimate and neutral governmental objective; second, whether prisoners have alternative ways of exercising the circumscribed right; third, whether accommodating the right would have a deleterious impact on other inmates, guards, and the allocation of prison resources generally; and fourth, whether alternatives exist that "fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests." Turner v. Safley, 482 U.S. at 91. "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

---

[3] Plaintiff alleges in his Complaint that he was unable to maintain a Ramadan fast on his own because he was unable to obtain proper nourishment (Doc. 3, ¶20). The parties have not addressed this as a separate claim for denial of religious accommodation, and have, instead, focused on the decision to prevent Plaintiff from participating in the communal fast at SCI-Greensbug. The Third Circuit recently provided a broad statement concerning the scope of the right to dietary accommodations based upon religious practice. "In essence, this is a constitutional right not to be forced into a Hobson's choice of either eating food items which offend one's religious beliefs, or eating very little or not at all." Norwood v. Strada, 249 Fed.Appx. 269, 272 (3d Cir. 2007). Thus, where a prisoner is not offered food at times when he is permitted to eat during a fasting period, this may place a substantial burden on his ability to practice his religion. Here, however, Plaintiff has not provided any factual support for a finding that he was presented with such a Hobson's Choice. Plaintiff was told in the initial response to his grievance that he was free to fast in his cell. While Plaintiff has alleged generally that he was forced to stop his fast after 20 days, he has failed to provide any account of what he actually was provided to eat, and when. Therefore, Plaintiff has failed to present any facts in support of a claim that he was forced to abandon his personal Ramadan fast due to the lack of nutrition.

10

Here, the decision not to allow Plaintiff to attend nightly communal meals with a community of Muslims whose beliefs he does not share does have a rational connection with a concern for a neutral government objective. As explained by Mr. Watkins, the communal gathering at SCI-Greensburg was limited to an identifiable Muslim congregation as defined by the Imam who leads that congregation. Further, when he investigated the matter prior to denying Plaintiff's grievance, Mr. Watkins became concerned that permitting someone so vocally opposed to the teachings of the congregation's leader to attend a nightly communal meal may have a negative impact on security at the prison. In Mr. Watkins's words, "Why you would choose to break your fast with a community of Muslims that you are vocally opposed to is of deep concern to me." (Doc. 28, Ex. F).

Plaintiff also had available to him an alternative means of exercising his right in that he was free to fast on his own. As for the third Turner factor, Mr. Watkins's security concerns establish that a real possibility of a deleterious effect on other inmates was presented. Finally, as Defendants note, there was no real alternative to their approach, other than to permit Plaintiff to participate and risk disruption of the communal meals by including Plaintiff, who had strong disagreements with the manner in which Islam was practiced by the group. In short, all of the Turner factors weigh in favor a finding that Plaintiff's free exercise rights were not violated when he was denied the opportunity to participate in the communal Ramadan meals at SCI-Greensburg.

### E. Qualified Immunity

Qualified immunity shields government officials performing discretionary functions from suits for monetary damages provided that they have not violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457

U.S. 800, 818 (1982).  The Supreme Court has stated that qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  Here, Defendants could not have been on notice that they were required to permit Plaintiff to attend a communal meal, even where they believed his desire to attend was insincere, and where they had legitimate security concerns should he be permitted to attend.  Indeed, even as late as February, 2008, the right to separate group religious worship service and separate group study was not clearly established.  E.g., Smith v. Kyler, 2008 WL 474252 (M.D.Pa. Feb.20, 2008) (no violation of RLUIPA to deny a separate group worship service for Rastafarians); Searcy v. Broome, 2007 WL 4443062, at *10 (D.S.C., Dec.14, 2007) (no violation of RLUIPA for failure to provide separate Mennonite worship services).  There are no cases that establish that a prisoner must be permitted to attend religious activities with a group that the prisoner himself has chosen not to join or follow.  Plaintiff cannot establish that Defendants knowingly violated the law and, hence, Defendants are entitled to qualified immunity with respect to all claims raised.

**F. Plaintiff's Due Process/Equal Protection Claim**

Plaintiff does not explain his asserted Due Process claim, and it must be premised upon the same facts as his First Amendment claim.  "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" Albright v. Oliver, 510 U.S. 266, 272 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)) (footnote omitted).  Thus, Plaintiff's claim arises, if at all, under the First Amendment, and he cannot recast his claim as one involving a deprivation of due process.

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). In order to state an equal protection claim, a plaintiff must show that: (1) the complaining person, compared with others similarly situated, was selectively treated; (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion; and (3) the defendant was motivated by an intent to punish or inhibit the exercise of the constitutional rights of a complaining party, or by a malicious or bad faith intent to injure the complaining party. Homan v. City of Reading, 963 F. Supp. 485, 490 (E.D. Pa. 1997) (citing Zahra v. Town of Southold, 48 F.3d 974 (2d Cir. 1995)). Plaintiff makes no allegations that any similarly situated individual was treated differently than he was treated, nor does he identify an impermissible consideration that purportedly played a part in the challenged decision in this case. Hence, he cannot make out an Equal Protection claim.

## G. Personal Involvment

Superintendent Lockett's only alleged actions in this case occurred after the decision not to permit Plaintiff to participate the communal fast was already made, and was limited to his review of an appeal from the denial of a grievance. Participation in the after-the-fact review of a grievance is not enough to establish personal involvement for purposes of a Section 1983 claim. Brooks v. Beard, 167 Fed.Appx. 923, 925 (3d Cir.2006); Cole v. Sobina, 2007 WL 4460617 (W.D.Pa.2007). Thus, Defendant Lockett is entitled to summary judgment on this basis as well.

## III. CONCLUSION

AND NOW, this 25th day of March, 2009,

IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by Defendants (Doc. 25) is GRANTED, and Plaintiff's Motion for Summary Judgment (Doc. 44) is DENIED.

s/ Cathy Bissoon  
Cathy Bissoon  
United States Magistrate Judge

Cc:  
DAVID LOGAN  
BY-8070  
SCI Greensburg  
165 SCI Lane  
Greensburg, PA 15601